IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No. 06-cv-01467-WDM-CBS

FRED RAYNEL LUCERO,

    Plaintiff,

v.

STAN HILKEY, Mesa County Sheriff, et al.,

    Defendants.

**ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE**

Miller, J.

This case is before me on the recommendation of Magistrate Judge Craig B. Shaffer (doc no. 160) that summary judgment be entered in favor of Defendants on all of Plaintiff's claims. Magistrate Judge Shaffer further recommend that Plaintiff's motion to amend his complaint be denied as futile. Plaintiff filed an objection to the recommendation and therefore is entitled to *de novo* review. 28 U.S.C. § 636(b). For the reasons set forth below, I accept Magistrate Judge Shaffer's recommendation.

Plaintiff is incarcerated at the Sterling Correctional Facility of the Colorado Department of Corrections. He was temporarily moved to the Mesa County Detention Facility ("MCDF") from April 19, 2006 to April 26, 2006 for a court appearance. On April 26, 2006, he was transported back to the Sterling facility in a van ride taking no longer than four hours. In his amended complaint, Plaintiff asserts three claims pursuant to 42 U.S.C. § 1983, all premised on his contention that his housing and transport violated the

Eight Amendment rights to safe and healthy conditions of confinement: (1) he was "double celled" at MCDF; (2) he received "carbon monoxide poisoning" when he was transported on April 26, 2006; and (3) he was subjected to "extreme heat conditions without adequate ventilation" during the same transport. Plaintiff does not object to the dismissal of Claim 2 or to the dismissal of all claims against the defendants in their official capacity. He also does not object to the dismissal of his claims for injunctive relief.

The remaining issues, then, are Claims 1 and 3, as asserted against the defendants in their individual capacities. All defendants have asserted defenses of qualified immunity. "In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999). Once a defendant has raised qualified immunity as an affirmative defense, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004).

1. Double-cell Conditions at MCDF

I agree with Magistrate Judge Shaffer that Plaintiff has not established that the defendants violated a constitutional right, much less a right that was clearly established at the time, by housing Plaintiff in a double cell for approximately one week. Prison officials must "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Craig v. Eberly*, 164 F.3d 490,

495 (10th Cir. 1998). To prevail on a "conditions of confinement" claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is "'sufficiently serious' " to implicate constitutional protection, and (2) prison officials acted with "'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). In order to satisfy the first requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. Deliberate indifference, the second requirement, "entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Id*. at 835. This standard is equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id*. at 836-37.

As noted by Magistrate Judge Shaffer, double bunking does not constitute a *per se* violation of a prisoner's right to humane conditions of confinement; rather, a specific identifiable need must be lacking as a result of the allegedly inadequate space. According to the undisputed evidence, Plaintiff was housed for approximately one week in a cell containing one single level attached bed and a temporary plastic molded bunk. The two bunks were in some places separated by no less than eight inches, making it difficult to navigate between the bunks. Plaintiff alleges that he fell several times as a result of this narrow separation, but it is undisputed that Plaintiff did not seek medical attention after his return from MCDF[1] until June, many weeks later. Even resolving all issues of fact in

---

[1]Plaintiff contends that he sent "kites" seeking medical attention while at MCDF but Defendants provide evidence that his file contains no record of kites or other written complaints from the week of his detention. Plaintiff correctly notes that this is an issue of fact; nonetheless, there is no dispute that after his return from MCDF, Plaintiff did not seek treatment for any injuries allegedly incurred from these falls.

Plaintiff's favor, Plaintiff cannot establish that his short stay in a cell with two bunks in close proximity posed a substantial risk of serious harm, as he has alleged no deprivation of sanitation, ventilation, or other basic need caused by this proximity. Moreover, I agree with Magistrate Judge Shaffer that the inconvenience of this narrow passage[2] is akin to a slippery floor – a safety hazard to which the general public is exposed on a daily basis and amounting to at most negligence rather than a danger of constitutional dimensions. *See Reynolds v. Powell,* 370 F.3d 1028, 1031-32 (10th Cir. 2004) (a "slip and fall," without more, does not amount to cruel and unusual punishment, even where prisoner was on crutches and had warned prison officials that he was at heightened risk of slipping on standing water in shower).

In his objections, Plaintiff contends that the housing condition does rise to cruel and unusual punishment because Plaintiff suffers from various "severe handicaps" and "physical deformities." Plaintiff's evidence does not support these assertions. Although his medical forms show that he has been diagnosed with a number of ailments, including degenerative disk disease, scoliosis, and arthritis, he has no medical restrictions and his housing restrictions limit him to first tier housing and lower bunks. Although Plaintiff was not placed in a first tier cell at MCDF, he has alleged no injuries from this, and the housing restrictions are irrelevant to the double celling. Plaintiff's mere listing of medical conditions is not sufficient to carry his "heavy burden" of demonstrating that he was at a substantial risk of serious harm as a result of the conditions in the cell.

---

[2]I also note that from the diagram presented by the parties, it appears that it is not necessary to traverse the narrow passage between the two beds to maneuver around the cell – by entering or exiting a bunk at the end rather than the side, the gap is avoided.

2. <u>Conditions in Van on April 26, 2006</u>

Plaintiff's remaining claim is that he was subjected to inhumane conditions of confinement while riding in the Mesa County Sheriff's van from MCDF to the Colorado Department of Correction's Denver Reception and Diagnostic Center on April 26, 2006. The trip was no more than four hours, with at least two stops. According to Plaintiff, during the first 30 miles of the trip, "the rear portion of the van quickly became extremely hot and intolerable, due to the lack of air and oxygen because the blower fan was not functioning." Defendants Westermeyer and McCabe were transporting Plaintiff and several other prisoners and admit that the van was hot for a period of time and that the prisoners complained and then began rocking the van. After the prisoners covered the security camera with a shirt, the deputies turned off the ventilation fan to obtain compliance with their directives, but told the prisoners that they would be stopping soon in Eagle, Colorado, which ended the protest. Even Plaintiff's evidence indicates that the heat was a problem for only a portion of the trip, possibly up to an hour. The prisoners were taken off the van during the two stops. The deputies did what they could to try to bring more cool air to the compartment, including opening the windows and setting the air conditioning at maximum.

Plaintiff was examined upon his arrival, where he reported nausea and discomfort. His temperature and blood oxygen saturation levels, however, were normal. In early May, 2006, the van underwent repairs, including to the heating/cooling system.

"While no single factor controls the outcome of these cases, the length of exposure to the conditions is often of prime importance." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001). In this regard, "the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an

Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *Id.* (citations omitted).

Plaintiff has conceded that there is no evidence to show that he was exposed to carbon monoxide fumes. The only issue, then, is whether being subjected to a hot and stuffy van ride for less than four hours (where the heat was a significant problem for less than an hour, or thirty miles) constitutes cruel and unusual punishment. Again, I agree with Magistrate Judge Shaffer that Plaintiff's facts do not, as a matter of law, demonstrate that Plaintiff was subjected to a substantial risk of serious harm. Extreme heat and lack of air could, even for a short time, potentially pose a serious risk to a prisoner's health. Here, however, the facts do not demonstrate that these conditions were present. Although Plaintiff and the others were obviously uncomfortable, the evidence does not establish that the short period of heat and stuffiness created a risk of serious harm to Plaintiff's health or safety. The medical examination revealed that Plaintiff's vital signs were completely normal. He was not dehydrated or suffering from an elevated temperature or oxygen deprivation, which indicates that the mitigation efforts by the deputies were adequate. The prisoners did not complain about the temperature of the van after the stop in Eagle, and apparently had a second stop before their arrival in Denver. Given the short duration, the apparently successful amelioration of the problem, and the lack of evidence of any harm suffered, I cannot conclude that the conditions in the van posed a substantial risk of serious harm to the inmates inside.

Plaintiff objects by repeating his allegations and asserting that the prisoner's complaints and his own symptoms is sufficient to demonstrate that the vehicle was intolerable for five hours. Plaintiff's own evidence does not support his allegations, and,

accordingly, his objections are overruled.

I agree with Plaintiff that there are some issues of fact as to whether the defendants had knowledge or notice that there could be problems with the van's air circulation system. However, because I conclude that the objective component of Plaintiff's Eighth Amendment claim is not satisfied, I need not address the issue of whether this means that the defendants were deliberately indifferent.

Plaintiff also objects to the recommendation on the grounds that Magistrate Judge Shaffer did not accept Plaintiff's affidavits and improperly resolved issues of fact in Defendants' favor. I agree with Magistrate Judge Shaffer's treatment of Plaintiff's affidavits, which were disregarded to the extent that they were based on hearsay evidence, were not based on personal knowledge, were immaterial, or were conclusory. Moreover, although there may be particular issues of fact regarding the distance between the two bunks, the weight of Plaintiff's bedding, Plaintiff's complaints or submission of kites while at MCDF, the time of the inmates' disturbance on the van, the extent of repairs on the van, and similar matters, I conclude, even resolving these issues in Plaintiff's favor, Plaintiff's complaints do not demonstrate a "sufficiently serious" problem with the conditions of confinement to be a constitutional violation.

Accordingly, it is ordered:

1. The recommendation of Magistrate Judge Craig B. Shaffer (doc no. 160) is accepted. Summary judgment is granted in favor of Defendants on all claims and this matter is dismissed with prejudice.

2. Defendants may have their costs.

DATED at Denver, Colorado, on February 27, 2008.

BY THE COURT:

s/ Walker D. Miller
United States District Judge